IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| John Doe, | ) | C/A No. 3:20-cv-03197-SAL |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **OPINION & ORDER** |
| United States of America, | ) | |
| Defendant. | ) | |

The above-captioned matter is before the court on Defendant United States of America's ("Defendant") Motion for Summary Judgment. [ECF No. 6.] The court has reviewed the record and the arguments of the parties and, for the reasons set forth below, grants the motion.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff John Doe ("Plaintiff") is a veteran of the United States Navy. [ECF No. 1, Compl. at ¶¶ 1, 5; ECF No. 6-1 at p.2.] As a veteran, he received medical and health treatment from different Department of Veterans Affairs facilities from 1976 to the present. Compl. at ¶ 6; *see also* [ECF No. 6-1 at p.2.] This action surrounds a positive HIV test that was conducted in 1995; chiefly, Plaintiff's December 1, 2015 discovery of the positive test and Defendant's corresponding failure to disclose the results of the test in the preceding 20 years.

Plaintiff instituted the above-captioned action on September 8, 2020. [ECF No. 1.] Plaintiff alleges Defendant's employees, servants, and agents committed medical malpractice and negligence by "failing to inform Plaintiff of a positive HIV test" and "failing to properly and timely diagnose and treat the Plaintiff's HIV infection." Compl. at "Summary of the Case." On November 13, 2020, Defendant moved for summary judgment, arguing all of Plaintiff's claims are barred by the statute of limitations. [ECF No. 6.] Plaintiff responded on December 14, 2020,

1

disputing the date of accrual of the cause of action on the failure to diagnose portion of his claim and arguing for application of the continuous tort rule. [ECF No. 9.] On December 21, 2020, Defendant replied. [ECF No. 11.] The court held a hearing on June 10, 2021. [ECF No. 17.] The matter is fully briefed, argued, and ripe for resolution by the court.

## STATEMENT OF FACTS

On December 1, 2015, Plaintiff presented to Dr. Theo Mwamba at the William Jennings Bryan Dorn VA Medical Center for a primary care appointment. Compl. at ¶ 14. At that appointment, Plaintiff was informed of a positive HIV test that was conducted on November 6, 1995. The notes following the appointment provide:

> While I was reviewing patient labs and trying to understand why he was having those pains, I came across lab results done in November 6, 1995, showing that patient had an HIV test that came back positive. I looked at the patient and ask him who was his infectious disease doctor and patient states he did not have one and ask him if he knew that his HIV test was positive[,] and he stated never was told it was positive. I then advised patient to have his HIV testing repeated, to have his viral load so I could refer him to ID for management. The patient declined to have the test done and states []my doubts is seeing that I was tested in 1995 at this hospital and no one ever told me that I was HIV positive UNTIL December 2015 when I had my schedule appointment with DR. MWAMBA. I again reinforced the need for the patient to get tested and I told him even if IT is not through the VA but I want him to be tested and to be treated accordingly. He verbalized understanding and stated he would do it outside the VA.

[ECF No. 6-2, Dorn VA 000121; *see also* Compl. at ¶ 14.] Further, Plaintiff's affidavit confirms that during the December 1, 2015 visit "Dr. Theo Mwamba told [him] that [his] 1995 test was positive and suggested [he] undergo an additional HIV test." [ECF No. 9-2, Doe Aff. at ¶ 8.] Plaintiff did not undergo an additional HIV test at that time.

Over the next two years, Plaintiff presented to various treatment providers, but continually refused to undergo additional HIV testing. The first appointment was just 10 days after the primary

2

care appointment, December 11, 2015. At that time, Plaintiff presented to Dorn for a mental health visit. [ECF No. 6-2, Dorn VA 000117–000118.] The notes following the appointment state:

> Session began with a discussion on the Veteran presenting issue. Veteran stated, "I was advised during my visit on December 11[sic], 2015 with Dr. Mwamba that I tested positive for HIV on November 06, 1995. I was never ever told *of this diagnosis* or treated by anyone, and I have come to the VA many times. I have Attorney's[sic] working on my case around the clock, and I feel healthy so I don't understand any of this." SW listened attentively and validated the Veteran feelings of frustration, anger and bewilderment. As recommended by Dr. Mwamba, SW also recommends that the Veteran be re-tested for HIV, and he agreed to be tested by an out-of-network provider.

*Id.* at Dorn VA 000118 (emphasis added).

Just over two weeks later, Plaintiff presented to a social worker for a December 28, 2015 mental health appointment. *Id.* at Dorn VA 000116–000118. The notes reflect that "SW made contact with Dr. Thorne [psychiatrist]," who "agreed to join [the] session, as the Veteran [was] in need of medical guidance regarding his *newfound diagnosis*." *Id.* at Dorn VA 000116 (emphasis added). The notes further reflect that Plaintiff informed Dr. Thorne of his December 1, 2015 appointment with Dr. Mwamba, and Dr. Thorne informed him "that f/u care can be rendered at this time through the Infectious Disease Providers." *Id.* at Dorn VA 000117. According to the notes, Plaintiff refused, stating:

> I am so afraid of the doctors here and I don't trust them right now. I have already had another HIV test done last week while I was visiting with family in New York. I will bring the results back to the both of you, and I will get treatment at that time if I need it.

*Id.* There is no evidence showing the results of the HIV test allegedly conducted in New York or Plaintiff's submission of the results to the Department of Veterans Affairs.

On March 30, 2016, Plaintiff presents to Dr. Mwamba, complaining of back pain and swelling in his neck area. *Id.* at Dorn VA 000112–000113. The "[a]ssessment and plan" note states:

3

> History of positive HIV test. Patient is still very emotional about the way his test result was managed. I again advised patient to have his test repeat[sic] and if indicated get a viral load and Refer to ID for management. Patient stated will do it but still very uncomfortable to do it at the DORN. I again told him he could DO it anywhere and that he needs to get proper care. He did express his frustration but at the end of the visit he was comfortable. "Give me sometime doc, I will do it."
>
> Plan of care discussed with patient who verbalized understanding and was agreeable.

*Id.* at Dorn VA 000113. And again, there is no evidence in the record to indicate that Plaintiff repeated an HIV test following the appointment.

Five months pass, and on August 29, 2016, Plaintiff presents to a social worker and Dr. Thorne for a mental health appointment. *Id.* at Dorn VA 000071, Dorn VA 000073. Dr. Thorne's note reflects continued discussions regarding the positive HIV test. It provides:

> Discussed, again, the need to obtain/clarify HIV testing from many years ago. Ptient[sic] refuses to get tested. States that he knows in his heart that he does not have it. Also discussed with him about his jaw swelling. He is scheduled for a CT scan today. Assisted patient in the process of changing his primary care provider. He states that he is suing the government (Atty George Sink) and wants to have his records faxed to him. Suggested that he speak to the staff in Release of Information. Angry at the VA and refusing to be tested.

*Id.* at Dorn VA 000073. The social worker's note is similar, noting that "Veteran stated, 'I will not be forced to have an HIV test. I will have one done when I am ready. As long as both of my women tested negative and they are healthy, I am fine.'" *Id.* at Dorn VA 000071.

More than two years after the Plaintiff was informed by Dr. Mwamba of the positive HIV test, Plaintiff continues to express frustration with Dorn and the handling of his 1995 test. In December 2017, Plaintiff presents to a psychiatrist in Charleston. [ECF No. 6-3.] The notes reflect that Plaintiff's "main complaint [was] about the Dorn VA." *Id.* The Charleston doctor's review of Dr. Thorne's notes "substantiates this claim that a medical doctor apparently came across a lab

4

results[sic] dated 1995 that reported the patient had had a positive test for HIV," but it was "not discovered until 2015." *Id.* The note continues to summarize Dr. Thorne's records, noting that "[w]hen the patient was informed of this he refused to be retested, refused referral to the infectious disease clinic" because "in his interpretation of this . . . this 'false report' represents malfeasance perpetrated by the government." *Id.* (errors in original). The Charleston doctor confirmed that "[r]epeated recommendations to be retested and to seek evaluation have all been consistently and repeatedly refused." *Id.*

With respect to the foregoing appointments, Plaintiff confirms that he "attended a number of appointments at Dorn VAMC and the Ralph H. Johnson VA Medical Center . . . after December 1, 2015, for PTSD treatment and other issues." Doe Aff. at ¶ 10. He maintains, however, that "[n]one of the doctors, nurses, or other treatment providers *diagnosed* [him][1] with HIV during these visits or offered treatment for a suspected HIV infection." *Id.* (emphasis added).

In September 2018, Plaintiff "began experiencing concerning neurological symptoms while staying abroad in Trinidad," and he "decided to return to the United States for treatment." *Id.* at ¶ 11; *see also* Compl. at ¶ 21. Plaintiff finally submitted to additional testing upon his arrival at the Maimonides Medical Center in New York. Doe Aff. at ¶ 12. The results of that additional testing again revealed Plaintiff was HIV positive. *Id.* On September 28, 2019, Plaintiff presented to a VA Medical Center in New York for receipt of an antiretroviral therapy prescription. *Id.* at ¶ 13;

---

[1] This is an interesting argument in light of the fact that at least two of the records use the word "diagnose" in relation to the 1995 HIV test—one of which even purports to quote Plaintiff's own words. [ECF No. 6-2, Dorn VA 000118 ("I was never ever told *of this diagnosis* or treated by anyone, and I have come to the VA many times." (emphasis added)); Dorn VA 000116 (referencing Plaintiff's "newfound diagnosis").]

5

*see also* Compl. at ¶ 24.[2] By this time, Plaintiff's HIV had progressed to "full-blown acquired immunodeficiency syndrome ('AIDS')." Doe Aff. at ¶ 17.

Plaintiff submitted a Standard Form 95 to the Office of General Counsel, Department of Veterans Affairs on January 10, 2019. [ECF No. 9-4.][3] The claim was denied in May 2020, [ECF No. 9 at p.3], and Plaintiff filed this action on September 8, 2020—four years and nine months after Dr. Mwamba informed the plaintiff of the positive HIV test and the need for managed care. [ECF No. 1.]

### STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific

---

[2] There appears to be a slight discrepancy between Plaintiff's Complaint and Plaintiff's Affidavit with respect to the date he presented for the prescription, but it is ultimately a discrepancy that has no impact on the court's analysis or conclusion. Plaintiff's Complaint alleges that he "presented to the New York VA Hospital on September 28, 2018," for the purpose of obtaining medications. Compl. at ¶ 24. Plaintiff's Affidavit, in contrast, states that he sought treatment on September 29, 2018. Doe Aff. at ¶ 13.

[3] Plaintiff subsequently submitted a separate Standard Form 95 to William P. Barr, then-Attorney General of the United States on September 11, 2020. [ECF No. 6-4.] Given the standard on summary judgment, the court will look to the earlier submission to the Department of Veterans Affairs for purposes of its analysis. [ECF No. 9-4.]

facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323.

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## ANALYSIS AND DISCUSSION

The sole issue before the court is whether Plaintiff's claims are barred by the Federal Tort Claims Act's ("FTCA") two-year statute of limitations. In that regard, the parties' dispute centers on when Plaintiff's claims accrued.

Defendant argues Plaintiff's claims accrued on December 1, 2015, when Plaintiff met with Dr. Mwamba for his primary care appointment and was informed of the 1995 positive HIV test. [ECF No. 6-1 at p.2.] Because Plaintiff's administrative claim was not filed within two years of December 1, 2015, Defendant contends Plaintiff's claims are time barred.

Plaintiff takes a different position. Plaintiff argues his claims did not accrue until September 2018, when he submitted to additional testing at Maimonides. [ECF No. 9 at p.5.] Because Plaintiff's administrative claim was filed within two years of September 2018, Plaintiff contends his claims are timely filed.

7

If Defendant is correct, Plaintiff's claims are barred by the statute of limitations. Yet, if Plaintiff is correct, the claims are not time barred and the case proceeds. The question for the court then is: Who is correct?

**I. FTCA and its Statute of Limitations.**

"It is well established that the United States Government, as sovereign, is immune from suit unless it consents to be sued." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990). The FTCA is a limited waiver of sovereign immunity. And while it gives limited consent to suit, it also requires presentation of a claim within a requisite period. The FTCA's limitations provision provides, in relevant part:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

As explained by the United States Supreme Court, the limitations provision represents "the balance struck by Congress in the context of tort claims against the Government." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). This court is "not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Id.*; *see also id.* at 118 ("[W]e should not take it upon ourselves to extend the waiver [of sovereign immunity] beyond that which Congress intended."). This court similarly may not "narrow the waiver that Congress intended." *Id.* at 118. The Fourth Circuit has echoed the Supreme Court's sentiment, describing section 2401(b) as "a deliberate balance struck by Congress whereby a limited waiver of sovereign immunity is conditioned upon the *prompt* presentation of tort claims against the government." *Gould*, 905 F.2d at 742 (emphasis added).

## II. Accrual of a Claim.

Here, both parties agree that the two-year period runs from the time Plaintiff's "claim accrues." 28 U.S.C. § 2401(b). Their opinions differ, however, regarding the date on which Plaintiff's claims actually accrued.

The general rule under the FTCA is that "a tort claim accrues at the time of the plaintiff's injury." *Kubrick*, 444 U.S. at 120. Though, "[a]ccrual of a claim in medical malpractice occurs when the plaintiff became aware—or would have become aware through the exercise of due diligence—both of the existence of injury and of its cause." *Kerstetter v. United States*, 57 F.3d 362, 364 (4th Cir. 1995); *see also Kubrick*, 444 U.S. at 120. This rule flows from the fact that the existence of an injury "may be unknown or unknowable until the injury manifests itself" and because "facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *Kubrick*, 444 U.S. at 122. When a plaintiff is aware of both (or should, through the exercise of due diligence, be aware of both), "[he] is no longer at the mercy of the" putative defendant. *Id.* "There are others who can tell him if he has been wronged, and *he need only ask*." *Id.* (emphasis added); *see also Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009) (describing *Kubrick* as an "inquiry-notice rule," such that a "claim accrues when a plaintiff possesses enough information with respect to her injury that, [h]ad [she] sought out independent legal and [expert] advice at that point, [she] should have been able to determine in the two-year period whether to file an administrative claim." (internal citation omitted)). Thus, the court must consider whether the undisputed evidence in the record establishes a date on which

Plaintiff knew or through the exercise of due diligence should have known of his injury and its cause. The court addresses both injury and cause as they relate to Plaintiff's two theories.[4]

A. **Failure to Inform.**

Plaintiff's Complaint outlines two bases for liability, the first of which is negligence for Defendant's "fail[ure] to inform Plaintiff of a positive HIV test for more than 20 years after the results were available." Compl. at "Summary of the Case;" *see also id.* at ¶ 9 ("[T]he standard of care required [Plaintiff] be informed of the positive test," but he "was not informed of the positive HIV test until decades later."). Plaintiff contends that it "is not a matter of medical opinion whether a patient should be told the results of an HIV test," and the failure to inform the patient of the test results falls under "general negligence principles." *Id.* at ¶ 31. The court easily concludes that Plaintiff's negligence theory is barred by the statute of limitations.

Plaintiff's affidavit concedes that "[d]uring a December 1, 2015 Dorn VAMC visit, Dr. Theo Mwamba told [him] that [his] 1995 HIV test was positive and suggested [he] undergo an additional HIV test." Doe Aff. at ¶ 8. This concession establishes that on December 1, 2015, Dr. Mwamba informed Plaintiff of his 1995 positive HIV test. At that time, Plaintiff knew that the test was performed in 1995 and that there was a 20-year delay in conveying the results.

---

[4] Plaintiff's two theories are (1) negligent failure to inform and (2) medical malpractice for failure to diagnose and treat. Both theories are addressed below. However, the court is of the opinion that Plaintiff's failure to diagnose and treat theory is simply a creative reframing of the failure to inform theory, necessitated by the timeliness problem. If Defendant failed to inform Plaintiff of his positive HIV test in 1995, it necessarily failed to treat Plaintiff's HIV at that time. Accordingly, when Plaintiff was informed of his 1995 positive test on December 1, 2015, he was on notice of the previous failure to inform and the Defendant's prior failure to treat him for HIV. This court is of the opinion that Plaintiff's failure to inform theory and his failure to diagnose theory are one in the same. Statedly differently, Plaintiff's failure to diagnose theory is his failure to inform theory in disguise. In any event, out of an abundance of caution, it separates the two theories below for purposes of analyzing the statute of limitations.

The undisputed facts in the record establish that there is no genuine dispute as to any material fact related to Plaintiff's knowledge on December 1, 2015. He knew Defendant failed to inform him of the results of his HIV test in 1995. Because the administrative claim was not filed within two years of December 1, 2015, Defendant is entitled to judgment as a matter of law on Plaintiff's failure to inform theory.[5]

**B. Failure to Properly and Timely Diagnose and Treat.**

Plaintiff's second basis for liability is that Defendant committed medical malpractice by "failing to properly and timely diagnose and treat the Plaintiff's HIV infection resulting in the progression of the infection to full-blown AIDS[.]" Compl. at "Summary of the Case;" *see also id.* at ¶ 17 ("Dr. Mwamba does not give Mr. Doe a definitive diagnosis, does not have a discussion with Mr. Doe about treatment options for HIV, or take any action to provide Mr. Doe HIV treatment."), ¶ 25 (stating it was "not until Mr. Doe's September 2018 hospitalization . . . that he was given a definitive diagnosis and became aware of his HIV status"). Again, out of an abundance of caution, see footnote 4, *supra*, the court addresses both the "injury" and "cause" requirements to determine whether Plaintiff's claim is timely.

    i.    **Injury.**

As to the injury prong, this case differs from many, if not all, of the examples provided by the parties.[6] Plaintiff argues his injury is the "progression of his HIV infection from the time when

---

[5] During the June 10, 2021 hearing, Plaintiff effectively conceded that the failure to inform theory was barred by the statute of limitations. Hearing Transcript at 39:19–40:9 ("THE COURT: . . . Are you conceding that certainly the statute of limitations has run on the failure to inform 20 years ago? MR. CALLOWAY: Yes. So if that's what the Court's referencing, yes. . . . If we were just talking about giving him the knowledge that he had the positive test in '95, that was what our claim was, then, yes, there would be a statute of limitations issue with that.").

[6] In *Kubrick*, for example, the injury—hearing loss—was obvious. 444 U.S. at 113; *see also Adkins v. United States*, 923 F. Supp. 2d 853, 860 (S.D. W. Va. 2013) (noting that in *Kubrick* the "*existence* of the injury was obvious, and the statute of limitations began to run immediately upon

11

his VA medical providers were aware of the 1995 positive test on December 1, 2015[,] until Doe was actually diagnosed with HIV by a non-governmental provider in September 2018." [ECF No. 9 at p.6.][7] Interestingly, this argument does not seek to hold Defendant responsible for Defendant's failure to diagnose and treat Plaintiff's HIV between 1995 and 2015. It is this line in the sand that evidences the flaw in Plaintiff's argument.

If there was a failure to diagnose and treat Plaintiff's HIV in December 2015, there was also a failure to diagnose and treat Plaintiff's HIV in November 1995. The only difference, of course, being that Plaintiff was on notice of the Defendant's 1995 failure to diagnose (*i.e.*, inform) and treat when he met with Dr. Mwamba in December 2015. The record is clear that as of December 1, 2015, Plaintiff knew his records reflected a positive HIV test in 1995, the test results were not disclosed to him in 1995, and he had not been treated for HIV between 1995 and 2015. Necessarily then, on December 1, 2015, Plaintiff was on notice of Defendant's failure to take any action following his positive HIV test in 1995.

In his opposition to summary judgment, Plaintiff relies on *Pinilla v. United States*, 760 F. App'x 164 (4th Cir. 2019). The court finds the unpublished and unbinding opinion inapposite to the facts of this case.[8] *Pinilla* involved a unique situation "where the full extent of an injury is

---

the discovery of its cause"). The same goes for *Kerstetter*, where the minor suffered from permanent kidney failure. 57 F.3d at 363.

[7] The court analyzes the injury prong using Plaintiff's argument regarding progression of HIV to AIDS from 2015 to 2018. However, despite Plaintiff's best efforts to contort the issue to fit it into the failure-to-diagnose mold, the court believes that untreated HIV for 20 years (1995 to 2015) is Plaintiff's actual injury. Defendant did not view Plaintiff's symptoms and misdiagnose him. It performed an HIV test in 1995 and failed to notify Plaintiff of the results. That's an affirmative failure, not a misdiagnosis or a failure to diagnose. *See Adkins*, 923 F. Supp. 2d at 858 (distinguishing, for FTCA accrual purposes, "cases involving a failure to treat or diagnose or some other omission on the part of medical professionals . . . from cases involving affirmative misconduct of medical professionals").

[8] Plaintiff also relies on the First Circuit Court of Appeals case, *Nicolazzo v. United States*, 786 F.2d 454 (1st Cir. 1986), which is also inapplicable here. The court there held that the statute of

*difficult to determine.*" *Id.* at 169 (emphasis added).⁹ In those instances, "mere suspicions by a layperson are insufficient to trigger claim accrual under the FTCA." *Id.* Accrual begins when the "plaintiff learn[s] from medical professionals about an injury's true extent." *Id.* The Fourth Circuit reversed the district court's grant of summary judgment in that case because the district court "inappropriately credited the suspicions of [the] parents that Dr. Ogunleye caused [the child's] permanent injury, which caused the court to rule that the FTCA claim had accrued **before** *medical professionals could have even opined on the injury's permanency* or cause." *Id.* at 171 (emphasis added).

---

limitations did not begin to run until the plaintiff "received his correct diagnosis," but the claim was for "negligently [] misdiagnosing and mistreating [plaintiff's] injury." *Id.* at 457, 455. Plaintiff's Complaint is devoid of any allegations of misdiagnosis or mistreatment. Plaintiff does not allege that he was diagnosed with some other illness and treated for that illness when he should have been diagnosed with and treated for HIV.

⁹ In *Pinilla*, the injury was nerve damage to the shoulder that occurred at birth. This type of injury can result from "natural forces of labor" or "from the attending doctor's use of inappropriate lateral traction." 760 F. App'x at 167. When the injury is the result of natural causes, it "typically resolve[s] in two years." *Id.* It is not until the injury is permanent—after the passing of the two-year period—that a doctor can distinguish between natural forces and doctor's actions as the *cause* of the injury. *Id.* While the Fourth Circuit discusses these concepts in relation to the injury prong, the analysis is more closely related to the causation prong. In *Pinilla*, there was no question that the child suffered an injury. The real question was whether the parents were, or should have been, on notice that the doctor's actions *caused* the injury. As the doctor's testimony made clear, that question was unanswerable until the child reached the age of two. A district court decision, *Bohrer v. City Hosp., Inc.*, 681 F. Supp. 2d 657, 665 (N.D. W. Va. 2010) (admittedly prior to *Pinilla*), recognizes this distinction: "[W]hen it is possible for a doctor to diagnose cerebral palsy is irrelevant to this Court's inquiry. This is because the FTCA inquires as to *injury*—not as to diagnosis or full extent of injury. 'To be aware of an injury, a plaintiff need not know the full extent of his or her injury. The limitations period will run even though the ultimate damage is unknown or unpredictable.'" (citing *Rice v. United States,* 889 F. Supp. 1466, 1470 (N.D. Okla. 1995)). The court in *Bohrer* further cautioned tying accrual to the severity of the injury, particularly in light of the availability of equitable tolling in FTCA cases, stating that "the statute of limitations might be extended indefinitely—perhaps even to death, since until then it is always possible that the Plaintiff's injury will worsen." *Id.* at 666 (citing *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994)). As an aside, Plaintiff does not oppose Defendant's arguments related to why equitable tolling is inapplicable here.

In the present case, the extent of Plaintiff's injury—progression of HIV due to lack of diagnosis and treatment—was not "difficult to determine." 760 F. App'x at 169. A medical professional could have opined on Plaintiff's injury and its extent on December 1, 2015, just as the personnel at Maimonides did in September 2018. All Plaintiff had to do was take another HIV test—as requested by Dr. Mwamba—to obtain his viral loads.

To allow Plaintiff to succeed in arguing that Plaintiff was not on notice of his injury until he agreed to take another test in September 2018 would extend *Pinilla* beyond its logical bounds and turn the statute of limitations on its head. *See generally, Young v. Clinchfield*, 288 F.2d 499, 503 (4th Cir. 1961) ("[T]he determination of when the cause of action accrued does not depend on when the injury was inflicted. To the contrary, the cause of action accrues only when the plaintiff has reason to know he has been injured. Generally[,] this will be when his condition is diagnosed, *unless* it is shown that the plaintiff 'should have known' at an earlier date that he was injured." (emphasis added)).

### ii. Cause.

Having concluded that the undisputed facts in the record establish that Plaintiff knew or by the exercise of due diligence should have known that he was injured as of December 1, 2015, the court turns to causation. This is the simpler analysis.

*Kerstetter* specifically addressed the meaning of "cause" for purposes of the FTCA. It held that "[s]o long as the plaintiff knows 'the critical fact' of '*who* has inflicted the injury,' he can protect his rights by inquiring whether the injury was negligently inflicted." 57 F.3d at 365 (emphasis). Thus, if the court determines that Plaintiff was aware of this "critical fact," *i.e.*, who failed to diagnose or treat him for HIV on December 1, 2015, Defendant is entitled to judgment as a matter of law.

It is on this point that Plaintiff's two theories collide. Whether Plaintiff's injury is the initial failure to inform him of the 1995 positive HIV test result or the alleged failure to diagnose and treat Plaintiff upon Dr. Mwamba's discovery of the positive test in December 2015, Plaintiff was aware of the "critical fact" of "who inflicted" the injury (or injuries) on December 1, 2015. At that time, Plaintiff knew his records reflected a positive HIV test from 1995, he had not been informed of the positive test before December 1, 2015, and he had not received treatment for HIV as of December 1, 2015. Armed with this information, "a reasonably diligent person in the plaintiff's position, reacting to any suspicious circumstances of which he or she might have been aware, would have discovered that an act or omission attributable to the government could have caused his or her injury." *Adkins*, 923 F. Supp. at 859. This court concludes that "in cases involving a failure to diagnose, a cause of action does not necessarily accrue when the malady is finally diagnosed, but rather *when the earlier failure to diagnose is discovered*." *Id.* at 858 (referencing *Miller v. United States*, 932 F.2d 301 (4th Cir. 1991) (emphasis added)). Plaintiff discovered the failure to diagnose at the same time he discovered the failure to inform—December 1, 2015.

It bears repeating: On December 1, 2015, Plaintiff was aware of the fact that his records reflected a positive HIV test dating back to 1995. There is no question that Plaintiff had not been treated for HIV between 1995 and 2015. The discovery of the failure to inform carries with it the discovery of the failure to diagnose and treat. If not one in the same, the two go hand-in-hand. As a result, based on the undisputed facts in the record, the court finds it beyond dispute that as of December 1, 2015, Plaintiff knew, or in the exercise of due diligence, should have known of both the existence and cause of his injury.

15

### III. Continuing Tort Rule.

The final issue the court must address is Plaintiff's contention that the continuing tort rule applies. [ECF No. 9 at pp.11–14.] Plaintiff argues that each time he presented to Defendant, between December 2015 and September 2018, constituted a continuing failure to diagnose and treat his HIV. According to Plaintiff, his claims did not accrue until Defendant's negligence ended in September 2018—when Plaintiff finally took the test Defendant had asked him to take in December 2015 (and on several occasions thereafter). Defendant argues the doctrine does not toll the statute of limitations because Plaintiff has only identified progressive harm flowing from the single damage-causing act. [ECF No. 11 at pp.5–8.] The court agrees with Defendant.

"The continuous treatment doctrine is based on a patient's right to place trust and confidence in his physician." *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 988 (4th Cir. 1987). It excuses a patient from "challenging the quality of care being rendered until the confidential relationship terminates." *Id.* Application of the doctrine is only permitted "when the treatment at issue is for the same problem and by the same doctor, or that doctor's associates or other doctors operating under his direction." *Miller*, 932 F.2d at 305.

Although Plaintiff continued to be treated by Defendant for mental health issues, there is no evidence that he was receiving continuous treatment for his HIV in an effort to "correct the injury." *See Knox v. United States*, No. 0:17-cv-36, 2018 WL 3217445, at *10 (D.S.C. June 29, 2018) (citing *Clutter-Johnson v. United States*, 714 F. App'x 205 (4th Cir. 2017)). Further, Plaintiff's allegations are at odds with the purpose behind the doctrine. Plaintiff did not "place trust and confidence in his physician." *Otto*, 815 F.2d at 988. He also affirmatively refused additional testing. Therefore, the court concludes that the continuous treatment doctrine does not apply.

### IV. Final Note.

This court is sympathetic to the wrong inflicted on Plaintiff. But no matter how sympathetic the court is to Plaintiff's position, it cannot ignore the fact that his claims are barred because of his own inexcusable lack of diligence. The record reflects, and Plaintiff agrees, that on December 1, 2015, Dr. Mwamba told him that he tested positive for HIV in 1995. The record further reflects that Defendant encouraged Plaintiff to act—get another test, obtain his viral load, etc.—no less than four times. Plaintiff refused.

*Kubrick* explained, "statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims." 444 U.S. at 125. "But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." *Id*. In this case, while Plaintiff may have "otherwise perfectly valid claims," there is no question that such claims are time barred because of Plaintiff's own lack of action. The court cannot allow its sympathy for Plaintiff to result in it turning a blind eye to the very purpose of the statute of limitations.

### CONCLUSION

For the foregoing reasons, Defendant United States of America's Motion for Summary Judgment, ECF No. 6, is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

July 15, 2021
Florence, South Carolina